**Neil W. GILLIES, Plaintiff-Appellee,**

v.

**AERONAVES DE MEXICO, S. A.,**
**Defendant-Appellant.**

**No. 71–3464.**

United States Court of Appeals,
Fifth Circuit.

Aug. 28, 1972.

Rehearing and Rehearing En Banc
Denied Oct. 4, 1972.

Phillip G. Newcomm, Miami, Fla., for defendant-appellant.

Guion T. DeLoach, Prunty, Ross & Olsen, John W. Prunty, Miami, Fla., for plaintiff-appellee.

Before TUTTLE, MORGAN and RONEY, Circuit Judges.

RONEY, Circuit Judge:

Neil W. Gillies brought this action against Aeronaves de Mexico, S.A., the Mexican national airline, seeking to recover damages allegedly due him under the provisions of the Mexican Federal Labor Law because of his wrongful discharge from employment with the airline. He recovered $47,666.66 in damages. The district court concluded that the Florida Statute of Limitations was controlling, not the limitation period in the Mexican Law which would have barred the suit. We hold that the Mexican Law should apply, that the suit was not timely brought, and that the judgment should be reversed.

## THE FACTS

Gillies is a citizen of the United States residing in Miami, Florida. He was originally employed in 1959 as a navigator for Aerovias Guest Airlines flying from Miami to Bermuda and Europe. He continued in the employ of this airline until its merger with Aeronaves. On March 1, 1963, Aeronaves employed Gillies as a navigator on the Miami to Madrid run. This employment arrangement was evidenced by a memorandum in writing dated March 5, 1963, and was for a one year period commencing on March 1, 1963, and ending on the last day of February, 1964.

Upon the expiration of the first year of employment Gillies continued as navigator on the same flight run until his employment was terminated by Aeronaves on June 30, 1968. The termination was found by the trial court to be without justifiable cause. From the end of February, 1964, until the termination the parties did not enter into a written contract nor was there in existence any written memorandum evidencing the employment conditions.

Since Gillies was a United States citizen, Aeronaves secured Mexican work permits for him in compliance with Mexican law. These were usually for a year or six months and were renewed from time to time as required. At the time Gillies was discharged he was covered by a Mexican work permit which had not expired.

Gillies had all his contacts with Aeronaves in Miami where he was hired, based, paid, and fired. Aeronaves had a facility in Miami and was licensed by Florida to conduct business there.

We agree that the district court had jurisdiction of the parties and the subject matter of this cause.

## THE MEXICAN FEDERAL LABOR LAW

The Mexican Federal Labor Law provides certain benefits for employees who are unjustly terminated from their jobs. Although in dispute, it can be assumed for the purpose of this decision that the

district court correctly held that plaintiff's employment was terminated without justifiable cause within the meaning of the Mexican Law. In such case, to be exempt from the obligation of reinstating the employee, the employer must pay the following compensation under Article 125 of the 1931 Law:

Article 125.—The compensations mentioned in the foregoing Article shall consist of:

I. Three months' wages.

II. If the work relation should be for a specific period of time not exceeding one year: a sum equal to the wages payable for one-half the period that services were rendered. If exceeding one year: a sum equal to six months' wages for the first year and equivalent to twenty days' wages for each following year during which services were rendered.

If the work relation was for an indefinite period, the indemnity shall consist of twenty days' wages for each year's service.

III. The amount of the unearned wages for the period elapsing from the date of dismissal until the indemnities mentioned in the two foregoing Sections have been paid.

No indemnity had been paid to plaintiff, and the district court held that he was entitled to unearned wages to the date of judgment under provision III.

This Law provided that the rights granted thereunder "shall lapse in one month" and that "the term for lapsing shall run from the moment of discharge." In 1970 a new law was substituted which provides that such actions "shall lapse in two months" and that "lapsing shall commence to run from the day following the date of dismissal." Although there is some dispute as to which law should be used to decide the substantive question, the matter is of no concern to the limitations argument. Under the one law plaintiff had until July 30, 1968, and under the other until August 30, 1968. Under either statute his suit filed on November 25, 1970 would be barred.

## THE ISSUE

The trial court decided that the suit was not barred by the Florida Statute of Limitations, a point disputed but unnecessary for us to resolve. It held that the Florida law applied and not the Mexican law because the limitations and lapsing provisions "are procedural provisions of the Mexican Federal Labor Law and cannot be applied by this Court." This appeal squarely raises the question of whether the law of the forum, Florida, or the law by which the contract is to be governed, Mexico, is to supply the controlling statute of limitations.

## THE DECISION

■■■ Since this is a diversity case, the issue is to be decided as if it were being determined in a Florida court applying the Florida conflict of laws rule. Klaxon Co. v. Stentor Electric Mfg. Co., 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). Florida follows the general rule of conflicts in contract actions. The construction of the contract and the legal rights flowing therefrom are controlled by the *lex loci contractus*, meaning either the law of the place where the contract was made, or the law by which the contract is to be governed if the cause of action arises under the laws of a foreign jurisdiction other than the place of the making of the contract. Hagen v. Viney, 124 Fla. 747, 169 So. 391 (1936). The law of the forum where the litigation is taking place, the *lex fori*, governs in procedural matters. Farris & Co. v. William Schluderberg, T. J. Kurdle Co., 141 Fla. 462, 193 So. 429 (1940).

■■ It is agreed that Mexican law controls the substantive rights and liabilities of the parties. The question then is whether the Mexican limitations

period is substantive or procedural. If it is procedural, the district court was correct in not applying it. If it is substantive, then plaintiff's claim is barred. Again, whether the provision is procedural or substantive must be determined by Florida law. Fahs v. Martin, 224 F. 2d 387 (5th Cir. 1955).

■ Generally, Florida follows the traditional rule that a statute of limitations is procedural for the purposes of choice of law requiring the *lex fori* to be applied. Van Deren v. Lory, 87 Fla. 422, 100 So. 794 (1924). However, Florida has long recognized an exception to this general rule. When an entirely new right of action is created by statute, and the same statute provides the limitation of time within which the action must be brought, then

"[s]uch a limitation of time is not like an ordinary statute of limitation affecting merely the remedy, but it enters into and becomes a part of the right of action itself, and if allowed to lapse without the institution of the action, such right of action becomes extinguished and is gone forever." Fowler v. Matheny, 184 So.2d 676, 677 (Fla.App.1966).

*See* La Floridienne, J. Buttgenbach & Co., Société Anonyme v. Seaboard Air Line Ry., 59 Fla. 196, 52 So. 298 (1910); Bowery v. Babbit, 99 Fla. 1151, 128 So. 801 (1930). This exception is well established in American jurisprudence:

"There is one well-settled exception to the general rule that forum law governs statutes of limitation. When a statute which creates a right specifies that the existence of its new creation shall continue only for a limited length of time, there is no existent right beyond what the statute has created, and no other state, even though its statute would allow a longer period for such suits, will entertain an action on a right which has ceased to exist." Leflar, American Conflicts Law, § 127, at page 305 (Rev.Ed.1968).

In an early Supreme Court case, the rationale for this principle was succinctly stated by Justice Holmes:

"The theory of the foreign suit is that, although the act complained of was subject to no law having force in the forum, it gave rise to an obligation, an *obligatio*, which, like other obligations, follows the person, and may be enforced wherever the person may be found. But as the only source of this obligation is the law of the place of the act, it follows that the law determines not merely the existence of the obligation, but equally determines its extent. It seems to us unjust to allow a plaintiff to come here absolutely depending on the foreign law for the foundation of his case, and yet to deny the defendant the benefit of whatever limitations on his liability that law would impose." Slater v. Mexican National Railroad Co., 194 U.S. 120, 126, 24 S.Ct. 581, 583, 48 L. Ed. 900 (1904).

In a Fifth Circuit case, when refusing to apply a Louisiana Workmen's Compensation Law without applying the Louisiana limitation period, Judge Sibley considered the limitation period as a condition of the right, stating:

"While ordinarily the limitations of the forum are applied as pertaining merely to the remedy, there is an exception where the cause of action is created by a foreign statute which also fixes a limitation for its assertion. The limitation is then considered to be a condition of the right, so that no recovery is allowed where recovery would be barred by the law which gives the right." Ford, Bacon & Davis v. Volentine, 64 F.2d 800, 802 (5th Cir. 1933).

Judge Wisdom later expressed the principle in terms of state interest in Kenney v. Trinidad Corp., 349 F.2d 832, 839 (5th Cir. 1965):

"The state that creates the cause of action has an obvious interest in determining how long it can be enforced,

but the forum has relatively little to set against the interest of the foreign state. There is something to be said for applying the prescriptive period of the forum if it is shorter than the foreign period: the courts of the forum should not be forced to decide stale claims merely because the foreign state has a longer period of limitation. But the forum has no particular interest in applying a *longer* period of limitation."

■ Regardless of which rationale is used, we think that the Florida courts would hold that the lapsing provision of the Mexican Federal Labor Law is substantive and should be applied under the exception to the general rule. The employee's right is created by the Law, the period of limitations is contained in the Law, and the lapsing period is specifically made applicable to employees in Gillies' situation.

The impact of liability created by the statute is a matter of Mexican interest. It is entirely proper that Mexican law should control the extent of that impact. The very words of the law speak in terms of the lapsing of a right, and not in terms of a bar to its enforcement.

■ The lapsing provisions could have been "interrupted" if, within the lapsing period, Gillies had filed a claim against Aeronaves with the Mexican administrative board set up by the Law to handle employer-employee disputes of this genre. It could also have been "interrupted" if the defendant had recognized verbally, in writing or by unquestionable acts, the right of Gillies. Neither of these events took place. There is no provision for a revival of the right once it has lapsed. The import of the Law is that it is the right which lapses, and not the remedy.

The justice of this conclusion is all the more evident because of the continuing liability and increasing amount of damages that accrue under the Law through the delay in payment of the claim. The Law gives a right to wages "from the date of dismissal up to the date the indemnities are paid." The importance of a speedy resolution of any claim is readily apparent. The delay of two years in bringing the claim resulted in a considerably larger judgment against defendant than Gillies could have obtained if he had brought the suit within the period required and it had been promptly determined and paid. Thus the very nature of the Law causes the lapsing period to have a direct effect upon the amount of the liability. With such a substantive effect on the amount of the claim, the argument that the lapsing provisions are only procedural loses all force.

The Mexican limitation period should have been applied. Under it Gillies' claim had lapsed. The district court should have denied recovery.

Reversed.

## ON PETITION FOR REHEARING AND PETITION FOR REHEARING EN BANC

PER CURIAM:

The argument in the petition for rehearing in reference to the Mexican Labor Law and the clearly erroneous doctrine of Rule 52(a) apparently overlooks Rule 44.1, Federal Rules of Civil Procedure. The Petition for Rehearing is denied and no member of this panel nor Judge in regular active service on the Court having requested that the Court be polled on rehearing en banc (Rule 35 Federal Rules of Appellate Procedure; Local Fifth Circuit Rule 12) the Petition for Rehearing En Banc is denied.